# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 30, 2013

No. 12-30750
Summary Calendar

Lyle W. Cayce
Clerk

SHELTON L. FRAZIER,

Plaintiff-Appellant

v.

SABINE RIVER AUTHORITY STATE OF LOUISIANA,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:11-CV-778

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Shelton L. Frazier, proceeding *pro se*, brought suit against his former employer complaining of race discrimination, retaliation, and a hostile work environment. The district court granted summary judgment in favor of the employer. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30750

FACTS

Frazier, an African-American, began employment with Sabine River Authority State of Louisiana ("Sabine") as an unclassified park attendant on May 21, 2008. Frazier earned $6.70 per hour and did not receive state benefits. Two months later, Sabine promoted Frazier to the classified position of Civil Service Park Buildings and Grounds Attendant with a raise to $7.56 per hour and eligibility for state benefits. In January 2009, Sabine awarded Frazier a merit increase to $7.86, and in 2010, he received another raise to $8.17 per hour.

Frazier alleged that in October 2010, a co-worker told Frazier that Sabine had hired a white unclassified park attendant, Seth Sebastian, before hiring Frazier and that Sebastian received $10.00 per hour. Sebastian never became a classified worker.

Frazier also alleged that in February 2011, he talked to his supervisor, Daniel Jones, about a co-worker using the word "nigger" in Frazier's presence and about various other concerns. According to Frazier, Jones stated a meeting should be held with the individual who used the word. Jones referred the matter to Mike Carr, the maintenance manager and a supervisor over both Jones and Frazier.

On March 16, 2011, Carr called Frazier into his office. Frazier alleged Carr did not like that Frazier had e-mailed his concerns to the executive director, thus bypassing Carr. The parties agree that the conversation became heated when they discussed Frazier's use of his cellular phone on the job. Frazier told Carr the accusation that Frazier "was the biggest cell phone user on the job" was "the biggest lie from the pits of hell." Carr replied, "[D]on't ever call me a li[ar] again." When Frazier asked if Carr was threatening him, Carr responded, "[Ye]s, sir." Sabine contends that Carr qualified this by stating, "I'm not . . . I'm saying that's a lie. [D]on't call me a liar." The executive director resolved the matter by sending Carr and Frazier home for the day with pay.

No. 12-30750

Frazier filed a threat-of-violence claim against Carr; the executive director subsequently determined there was no threat of violence.

Frazier also contends that in addition to the co-worker's use of the word "nigger" discussed above, three other instances of racial discrimination occurred at Sabine.  First, he heard a co-worker refer to a town in Sabine Parish called "Negreet," but according to Frazier, the co-worker meant "nigger."  Second, Frazier was told by a co-worker that another co-worker had used the word "nigger" before.  And third, he alleged a co-worker made a noose and gestured as though he was hanging it around another co-worker's neck.  This was done in Frazier's presence, though it was not directed at him.

Frazier filed an EEOC charge on August 16, 2011, and resigned from his position on August 25, 2011.  After receiving a right-to-sue-letter, he filed the complaint that is the subject of this appeal, alleging race discrimination, retaliation, and a hostile work environment.  The district court granted summary judgment in favor of Sabine.

## DISCUSSION

The district court's grant of summary judgment is reviewed *de novo*. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549 (5th Cir. 2012).  Summary judgment is appropriately granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists if the evidence is such that a reasonable juror could find for the non-moving party.  *Davis-Lynch*, 667 F.3d at 549.  Questions of fact must be "viewed in the light most favorable to the nonmovant and questions of law are reviewed *de novo*."  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 327 (5th Cir. 2009).

Frazier's arguments on appeal challenge the district court's resolution of questions of law and fact. To address his arguments, we examine his race discrimination, retaliation, and hostile work environment claims separately.

3

## A.    *Race Discrimination*

Frazier claims Sebastian's higher pay rate was race discrimination and violated the Fair Pay Act.  A claim of race discrimination is analyzed using the traditional burden-shifting rules of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To survive summary judgment in a race discrimination case, a plaintiff must first establish a *prima facie* case showing he (1) is a member of a protected class, (2) was qualified for the position held, (3) was subject to an adverse employment action, and (4) was "treated differently from others similarly situated."  *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).

Because Frazier offered Sebastian as a comparator employee to show that Frazier was treated differently, Frazier has the burden of demonstrating that "the employment actions at issue were taken under nearly identical circumstances."  *Turner v. Kan. City S. Ry.*, 675 F.3d 887, 893 (5th Cir. 2012). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories."  *Id.*

The district court held that Frazier failed to offer competent summary judgment evidence that he and Sebastian had "nearly identical circumstances," as required to establish a comparator for purposes of Frazier's *prima facie* case. *Id.*  Frazier first argues on appeal that he and Sebastian were equally qualified and neither had any certifications prior to being hired by Sabine for the same position.  Frazier contends he provided the district court with a copy of the Louisiana workers' website showing that he and Sebastian both were hired as unclassified park attendants.  This fact is not in dispute, and it does not demonstrate that they were equally qualified or that they had "nearly identical

circumstances," particularly for an unclassified position. Though the specific qualifications are disputed, Sebastian was trained in plumbing and Frazier had a background in carpentry. Therefore, the district court correctly held Frazier did not meet his burden of demonstrating that Sebastian was an appropriate comparator to establish his *prima facie* case.

Second, Frazier contends that the district court erred in holding that his race discrimination claim was prescribed. Frazier argues his claim was equitably tolled until October 2010 when he became aware of the difference in pay. We need not reach this issue because we hold that the district court was correct in finding that Frazier had not demonstrated that Sebastian was a comparator employee and thus had not made a *prima facie* case.

Frazier also contends that the district court erred in holding that his discriminatory pay claim under the Fair Pay Act was time-barred. The district court reasoned that "Frazier was only an unclassified worker for, at most, two and a half months at the very beginning of his career with Sabine." Frazier argues time did not begin to run on the prescription period under the Fair Pay Act until the date he resigned.

The Fair Pay Act provides different points in time in which the charging period will be triggered:

> an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A). Following Frazier's July 2009 promotion, he was no longer affected by or subject to the allegedly discriminatory compensation

decision because he and Sebastian could no longer have been comparators. *See id.*; *Turner*, 675 F.3d at 893. Therefore, the district court did not err in holding that the claim under the Fair Pay Act was time-barred.

## B.     *Retaliation*

Frazier claims Sabine retaliated against him for complaining about discrimination with regard to his pay rate. To survive summary judgment on a claim of retaliation, Frazier must establish that (1) he participated in a protected activity; (2) he experienced an adverse employment action; and (3) there was a causal link between his protected activity and the adverse employment action. *Stewart*, 586 F.3d at 331.

Preliminarily, the district court held that Frazier did not preserve a retaliation claim by raising it with the EEOC, "a condition precedent to any Title VII suit." *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). In Frazier's EEOC charge, he did not check the "retaliation" box, and in the particulars section, he failed to mention any claim of retaliation.

Frazier argues on appeal that failure to check the appropriate box is not fatal to his retaliation claim. This is true, but Frazier's description of his charge in the particulars section described only a discrimination claim: "I was subjected to harassment, denied a pay raise and overlooked when work tasks and assignments were passed out . . . I believe I have been discriminated [against] because of race." While the court's scope of inquiry is not limited to the boxes checked, it is limited to that "which can reasonably be expected to grow out of the charge." *Id.* "[T]he crucial element of a charge of discrimination is the factual statement contained therein. Everything else entered on the form is, in essence, a mere amplification of the factual allegations." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970). Discrimination and retaliation claims are distinct, and the factual statement in Frazier's EEOC charge did not put Sabine on notice that Frazier was asserting a retaliation claim.

No. 12-30750

Additionally, although Frazier argued his retaliation claim in his opposition to summary judgment, he did not address the issue raised by Sabine that he failed to preserve this claim.

Because we hold Frazier did not preserve a retaliation claim, we need not address his argument raised for the first time on appeal that the denial of a pay raise was retaliatory in nature. We also need not reach Frazier's argument that Sabine's references in its motion for summary judgment to his excessive use of leave was pretext for retaliation. The district court correctly granted summary judgment on Frazier's retaliation claim.

## C.    *Hostile Work Environment*

As to his hostile work environment claim, Frazier argues the district court failed to address his allegations that a co-worker plotted "to set him up for failure" and that his job required he work on a lake even though he could not swim. A claim of hostile work environment requires a showing by the plaintiff that he

> 1) belongs to a protected group; 2) was subjected to unwelcome harassment; 3) the harassment complained of was based on race; 4) the harassment complained of affected a term, condition, or privilege of employment; 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). For a work environment to be deemed sufficiently hostile, we consider all relevant circumstances. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

No. 12-30750

The district court stated it reviewed the "total record." The district court specifically addressed the alleged threat made by Carr, the co-worker's use of the word "nigger" in Frazier's presence, the use of the word "Negreet," and the noose gesture in the context of these factors. We agree with the district court's well-reasoned conclusion that these instances were isolated and not severe or pervasive enough to support a hostile work environment claim. Even considering the allegations that a co-worker intended to set Frazier up to fail and that he had to work near water, we do not conclude that Frazier made the required showing to survive summary judgment. Frazier does not provide concrete examples, and he does not show – or even allege – that the co-worker's alleged plot or his work requirements were based on race. *See id.* at 269. Therefore, as the district court concluded, Frazier has not established a *prima facie* claim for hostile work environment.

AFFIRMED.