# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30727

United States Court of Appeals
Fifth Circuit

**FILED**
July 6, 2016

Lyle W. Cayce
Clerk

TERRANCE J. LAVIGNE,

      Plaintiff–Appellant,

v.

CAJUN DEEP FOUNDATIONS, L.L.C.,

      Defendant–Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-441

Before HIGGINBOTHAM, PRADO, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Terrance J. Lavigne brought suit against Defendant–Appellee Cajun Deep Foundations, L.L.C. alleging retaliation and discrimination related to his compensation, discipline, and termination under Title VII of the Civil Rights Act of 1964 and Louisiana law. The district court dismissed several of these claims at summary judgment and then found for Defendant on Plaintiff's remaining claims following a bench trial. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30727

## I.  FACTUAL BACKGROUND

Plaintiff began working for Cajun Deep Foundations, L.L.C., a construction company, in 2007 and continued working there until he was fired in March 2011. During this time, Plaintiff rose to the position of Drill Shaft Foreman. As a Drill Shaft Foreman, Plaintiff was paid $20.00 per hour. According to Plaintiff, however, he actually performed the duties of a Superintendent but was not paid the higher wage for employees in that position.

During Plaintiff's employment, he was reprimanded several times for violating company policies. In January 2009, Plaintiff was suspended for three days without pay for failing to wear proper safety equipment. On February 7, 2011, Plaintiff failed to comply with proper safety procedures and, as a result, struck a bridge with a piece of machinery. Following this incident, Plaintiff was required to take a drug test, suspended for three days, and placed on probation for one year. In March 2011, while still on probation, it was discovered that Plaintiff had violated Defendant's Motor Vehicle Policy by failing to disclose motor vehicle violations. According to Defendant, Plaintiff's violation of the Motor Vehicle Policy disqualified him from driving or operating equipment as part of his job. Defendant terminated Plaintiff on March 22, 2011.

On March 28, 2011, six days after he was fired, Plaintiff completed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC"). However, the EEOC did not receive Plaintiff's formal signed Charge of Discrimination until August 22, 2011. In the Charge of Discrimination, Plaintiff alleged that he was employed by Defendant as a "Crew Supervisor" and that he had been "subjected to unfair terms and conditions of employment because of my race (Black)." Specifically, Plaintiff asserted that in February 2011, he was suspended and forced to take a drug test after accidently striking

2

No. 15-30727

a bridge with a piece of machinery and that white employees who had been involved in similar accidents had not been suspended or subjected to drug testing. Plaintiff also alleged that he had not received a "Supervisor's pay even though I have [a] supervising job" and that "[o]ther Supervisors of a different race have received pay increases because of their Supervisory tasks." In March 2012—nearly one year after he was terminated—Plaintiff amended his Charge of Discrimination to add the claim that he was terminated in retaliation for challenging Defendant's discriminatory employment practices.

In July 2012, Plaintiff filed a pro se complaint in the District Court for the Middle District of Louisiana alleging that Defendant had violated Title VII and Louisiana law. Plaintiff alleged that he was "treated less favorably than white male employees who violated the same or similar [company] policies"; that he had been "discriminatorily overlooked and/or denied promotion to and the pay rate of superintendent"; and that he had been "retaliated against for seeking the promotion to superintendent and accompanying pay rate."

Defendant moved for summary judgment, and in May 2014, the district court granted Defendant's motion in part and dismissed several of Plaintiff's claims. Relevant to this appeal, the district court dismissed as time-barred several of Plaintiff's Title VII disparate compensation claims that were based on events that occurred before October 26, 2010, which was 300 days prior to the filing of his August 2011 Charge of Discrimination. The district court similarly dismissed Plaintiff's claim of retaliatory discharge, which Plaintiff added to his EEOC charge in March 2012, because the court held that it did not relate back to his original Charge of Discrimination and was thus time-barred. The district court also dismissed Plaintiff's disparate treatment claim related to his termination because he failed to state a prima facie case.

Plaintiff proceeded to trial on his disparate treatment claim based on his 2011 suspension and his disparate compensation claims based on events that

occurred after October 26, 2010. After a two-day bench trial, the district court found that Plaintiff had established that he was paid less than similarly situated white employees but had failed to show that Defendant discriminated against him when it suspended him for three days following his February 2011 accident.

Following the court's order, both parties moved for reconsideration. In July 2015, the district court granted Defendant's motion for reconsideration and denied Plaintiff's. The court stated that upon further review of the evidence adduced at trial, Plaintiff had not shown that he was paid less than other similarly situated employees or that Defendant had acted with discriminatory intent. The district court accordingly entered judgment for Defendant. Plaintiff timely appealed.

## II. DISCUSSION

Plaintiff challenges the district court's dismissal of several of his claims at summary judgment and its findings against him following a bench trial.

"We review a district court's grant of summary judgment *de novo*." *Morris v. Equifax Info. Servs., LLC,* 457 F.3d 460, 464 (5th Cir. 2006). A court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

"In the appeal of a bench trial, we review findings of fact for clear error and conclusions of law and mixed questions of law and fact *de novo*." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009) (footnote omitted). "A finding of fact is clearly erroneous when, although there is evidence to support

it, the reviewing court based on all the evidence is left with the definitive and firm conviction that a mistake has been committed." *Flint Hills Res. LP v. Jag Energy Inc.*, 559 F.3d 373, 375 (5th Cir. 2009) (quoting *Hous. Expl. Co. v. Halliburton Energy Servs., Inc.*, 359 F.3d 777, 779 (5th Cir. 2004)).

## A.     Plaintiff's disparate compensation claims

### 1.     Claims based on events before October 26, 2010

"This Circuit has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). To effectively exhaust administrative remedies, "[a] Title VII plaintiff must file a charge of discrimination with the EEOC no more than 180 days—300 days in a deferral state such as Louisiana—after the alleged discriminatory employment action occurred." *Carter v. Target Corp.*, 541 F. App'x 413, 419 (5th Cir. 2013) (per curiam).

In its order at summary judgment, the district court dismissed Plaintiff's Title VII claims that were based on events that occurred before October 26, 2010. Plaintiff argues that this was in error because the district court should have used the date that he completed the EEOC Intake Questionnaire rather than the date of the Charge of Discrimination. Plaintiff makes this argument for the first time on appeal.

"[A]n argument is waived if the party fails to make the argument in response to summary judgment." *Gilley v. Protective Life Ins. Co.*, 17 F.3d 775, 781 n.13 (5th Cir. 1994). To avoid waiving an argument, the party must present it "to such a degree that the district court has an opportunity to rule on it." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (quoting *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996)). That is, a party "must press and not merely intimate the argument during the proceedings before the district court." *Id.* (quoting *N.Y. Life Ins. Co.*, 84 F.3d at 141 n.4).

No. 15-30727

Plaintiff's opposition to Defendant's motion for summary judgment does not mention the EEOC Intake Questionnaire. Despite the fact that Defendant had moved for summary judgment on the ground that several of Plaintiff's claims were time-barred, Plaintiff's opposition focuses exclusively on his original Charge of Discrimination and Amended Charge of Discrimination. The dissent argues that Plaintiff raised the issue of the Intake Questionnaire before the district court because his opposition at summary judgment stated that he "contacted the EEOC to file a charge of discrimination" shortly after being terminated. Not only does this section of Plaintiff's opposition fail to mention the Intake Questionnaire or allege that he actually filed a charge of discrimination at this time, but this vague passing reference falls short of sufficiently presenting this argument. *See, e.g.*, *In re Packer*, 816 F.3d 87, 91 n.2 (5th Cir. 2016). Accordingly, this argument has been waived.

Plaintiff argues that this Court should overlook this lapse because refusing to consider his argument on appeal would result in a miscarriage of justice. An issue that has been waived below may be considered on appeal where "the party can demonstrate 'extraordinary circumstances.'" *State Indus. Prods. Corp. v. Beta Tech., Inc.*, 575 F.3d 450, 456 (5th Cir. 2009). "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *Id.* (quoting *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996)).

This exception does not apply here. Determining whether Plaintiff's Intake Questionnaire constitutes a charge under the test outlined by the Supreme Court in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008),

No. 15-30727

would require a fact-intensive inquiry into the contents of the questionnaire.[1] As such, it is not a pure question of law. Accordingly, we will not consider Plaintiff's waived argument, and the district court's dismissal of his Title VII disparate compensation claims based on events that occurred before October 26, 2010, is affirmed.[2]

### 2.    Claims based on events after October 26, 2010

Plaintiff proceeded to trial on his disparate compensation claims based on events that occurred after October 26, 2010. In its ruling following trial, the district court held that while Plaintiff was a Drill Shaft Foreman, he performed the work of a Superintendent on several projects but had not been paid as much as other Superintendents who were white. Accordingly, the district court found that Plaintiff had "proven by a preponderance of the evidence that he was paid less than similarly situated non-African American employees for substantially

---

[1] Moreover, even if we were inclined to engage in this inquiry, we would be unable to do so here. Plaintiff has neither entered the Intake Questionnaire into the record nor provided any evidence about its contents.

[2] The dissent contends that the untimeliness of Plaintiff's filing should also be excused under the doctrine of equitable tolling. As an initial matter, Plaintiff has never argued that equitable tolling should apply—not below and not on appeal. *See, e.g.*, *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 209 (5th Cir. 2015) (holding that a plaintiff's Title VII claim "cannot be saved by the doctrine of equitable tolling" where the plaintiff "did not raise [the equitable tolling] argument with the district court"). Nevertheless, the dissent says that equitable tolling should apply because Plaintiff has complained that the EEOC was understaffed and slow in producing a formal charge of discrimination for him to sign. This is not sufficient to justify equitably tolling the filing period. As we observed in *Taylor v. General Telephone Company of the Southwest*, 759 F.2d 437 (5th Cir. 1985), it is the plaintiff's burden to show facts justifying equitable tolling. *Id.* at 442. We have recognized three situations in which equitable tolling in a case such as this might be appropriate. *See Wilson v. Sec'y, Dep't of Veterans Affairs on Behalf of Veterans Canteen Servs.*, 65 F.3d 402, 404 (5th Cir. 1995) (per curiam). Those are: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." *Id.* Plaintiff has not shown facts to support any of these situations. Plaintiff was clearly aware of the facts upon which his complaint was based and knew about the nature of his legal rights. Further, there is no allegation or indication that Defendant concealed any fact from him or that the EEOC misled him about his rights.

the same job responsibilities." In response, Defendant moved for reconsideration arguing that the district court committed manifest error in concluding that Plaintiff was similarly situated to employees who were Superintendents and in ruling for Plaintiff despite the fact that there was no finding that Defendant had engaged in intentional discrimination.

In July 2015, the district court granted Defendant's motion for reconsideration. It stated that upon further review of the evidence, the use of Superintendent employees as comparators had been in error since Plaintiff only occasionally performed Superintendent-like duties. Instead, the district court concluded that the appropriate comparator was "other Forem[e]n who, like Lavigne, occasionally performed the duties of Superintendents on drill-only jobs." The district court noted that the evidence presented at trial showed that, like Plaintiff, other employees also performed some Superintendent duties on certain jobs but were not paid the higher Superintendent wage. The district court also stated that even if Superintendent employees were a proper comparator, Plaintiff had failed to demonstrate that Defendant engaged in intentional discrimination by paying him "less than similarly situated non-African American employees *because of* his race." Accordingly, the district court reversed its prior ruling and held that Plaintiff had not proven a claim of disparate compensation.

Plaintiff argues that the district court's ruling on reconsideration should be reversed for two reasons. First, he argues that it applied an incorrect legal standard in determining the appropriate comparators because it considered job titles rather than "focus[ing] primarily on the duties/responsibilities performed by the respective employees." Second, Plaintiff argues that the district court's factual findings that he was not paid less than similarly situated employees and that Defendant did not act with discriminatory intent are clearly erroneous.

No. 15-30727

In determining whether a plaintiff was treated less favorably than other employees, comparators must be "similarly situated" to the plaintiff. *Lee v. Kan. City S. Ry. Co.,* 574 F.3d 253, 259 (5th Cir. 2009). While "[t]here is no precise formula to determine whether an individual is similarly situated to comparators," *Lindquist v. City of Pasadena,* 669 F.3d 225, 233 (5th Cir. 2012) (quoting *McDonald v. Vill. of Winnetka,* 371 F.3d 992, 1002 (7th Cir. 2004)), "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances,'" *Lee,* 574 F.3d at 260 (quoting *Little v. Republic Ref. Co., Ltd.,* 924 F.2d 93, 97 (5th Cir. 1991)).

As we have observed, "[w]hat is relevant in one case might not be relevant in another . . . and 'the degree to which others are viewed as similarly situated' necessarily will depend 'substantially on the facts and context of the case.'" *Lindquist,* 669 F.3d at 234 (quoting *Jennings v. City of Stillwater,* 383 F.3d 1199, 1214 (10th Cir. 2004)). Accordingly, "the inquiry is case-specific and requires us to consider 'the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision.'" *Id.* (alteration in original) (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1203 (11th Cir. 2007)).

The district court neither adopted nor applied a legal standard at odds with our precedent. Contrary to Plaintiff's argument, the district court did not focus on job titles. Rather, it considered a multitude of relevant evidence including the job responsibilities, experience, and qualifications of a number of Defendant's employees. Accordingly, we find that Plaintiff's argument in this regard is without merit.

Plaintiff next challenges the district court's findings of fact. In its order on reconsideration, the district court concluded that Plaintiff was not similarly situated to the Superintendent employees he had identified, but rather was

most closely comparable to Horace Lagrow and Jonathan Sharp who, like Plaintiff, also periodically performed Superintendent-like duties on certain jobs. Because these employees, both of whom are white, were paid similarly to Plaintiff, the district court found that Plaintiff had not shown he was paid less than other similarly situated employees outside his protected class.

On appeal, Plaintiff lists the evidence that he believes shows this finding is clearly erroneous and argues that it demonstrates that he is actually more closely comparable to other Superintendent employees who were paid more than him. This evidence, however, does not show that the district court's findings are clearly erroneous. Rather, it merely shows that there is some evidence to support Plaintiff's view. This is not enough to reverse a district court's findings of fact under the clear error standard. *See In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) ("As long as there are two permissible views of the evidence, we will not find the factfinder's choice between competing views to be clearly erroneous.").

Moreover, this evidence does not show that the district court erred in finding that Plaintiff failed to demonstrate that Defendant acted with discriminatory intent. "A disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' . . . ." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988)). This requirement extends to claims alleging discrimination in compensation. *Thibodeaux-Woody v. Hous. Cmty. Coll.*, 593 F. App'x 280, 285 n.4 (5th Cir. 2014). "[D]iscriminatory intent is a finding of fact to be made by the trial court . . . . Thus, a court of appeals may only reverse a district court's finding on discriminatory intent if it concludes that the finding is clearly erroneous . . . ." *Pullman-Standard v. Swint*, 456 U.S. 273, 289–90 (1982).

Plaintiff argues on appeal that he established discriminatory intent because he testified that two of Defendant's employees, Seth Gillen and

Jonathan Sharp, told him that he would never be promoted to Superintendent because he was black and that Gillen referred to Plaintiff and his brother "in a derogatory manner, specifically calling them 'boys.'" These allegations, however, do not establish that Defendant acted with discriminatory intent. "[S]tatements by non[-]decision makers, or statements by decision makers unrelated to the decisional process itself [do not] suffice to satisfy the Plaintiff's burden" of showing discriminatory intent. *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001) (third alteration in original) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

Plaintiff has neither argued nor shown that Gillen or Sharp were responsible for setting Plaintiff's pay, approving his promotions, or otherwise involved in decisions related to his employment. To the contrary, the district court found that the relevant evidence showed that Chris Jacobs, Defendant's Drill Shaft Manager, was the ultimate decision maker. Accordingly, Plaintiff has failed to demonstrate that the district court's finding is clearly erroneous.

## B.     Plaintiff's wrongful termination claim

"Wrongful termination claims are . . . evaluated under the *McDonnell Douglas* framework." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014). To state a prima facie case of discrimination on the basis of termination, a plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged . . . ; and (4) was replaced by someone outside his protected group." *Id.* (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). At summary judgment, the district court held that Plaintiff had failed to state a prima facie case of discrimination related to his termination because he had not shown the existence of a genuine dispute that he had been replaced by someone from outside of his protected group. Instead, the district court pointed to evidence which indicated that Plaintiff had actually been replaced by Charles Nelson,

an African-American male.

Plaintiff contends that summary judgment was inappropriate because his brother, Romell Lavigne, stated in a declaration that "Plaintiff was replaced by Charles Vignes, a Caucasian." Romell Lavinge's declaration, however, does not say that Vignes replaced Plaintiff. Rather, it states only that "[a]pproximately one (1) year following the termination of Terrance Lavigne, Charles Vignes, a non-African-American Drill Shaft Operator with Cajun Deep Foundations Drilling Division, was promoted to the position of Drill Shaft Foreman."

Next, Plaintiff argues the district court erred in concluding that Nelson had replaced him because there is "the possibility that the African-American hired prior to Charles Vignes'[s] promotion did not perform the same duties that the Plaintiff performed." However, "unsupported speculation [is] not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003). Plaintiff has offered no evidence to indicate that Nelson did not perform the same job duties. Instead, Plaintiff merely speculates that this might have been the case. Accordingly, Plaintiff has not shown that the district court erred in granting summary judgment as to this claim.

## C.    Plaintiff's retaliation claim

In March 2012—nearly a year after he was terminated—Plaintiff amended his charge of discrimination to add the allegation that he was terminated in retaliation for challenging Defendant's discriminatory employment practices. The district court held that Plaintiff's retaliation claim did not relate back to his initial Charge of Discrimination and was therefore time-barred as it relied on an event (the termination of his employment) that occurred more than 300 days before Plaintiff brought this claim. Plaintiff contends that this holding was in error.

"A charge may be amended to cure technical defects or omissions . . . or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id.* However, "amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination" unless "the facts supporting both the amendment and the original charge are essentially the same." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878–79 (5th Cir. 2003).

"[D]iscrimination and retaliation claims are distinct, and the allegation of one in an EEO charge does not exhaust a plaintiff's remedies as to the other." *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009) (per curiam). Accordingly, Plaintiff's claim of retaliation will only relate back if the facts supporting this claim "are essentially the same" as those contained in his original charge. *Manning*, 332 F.3d at 879. "To establish a prima facie case of retaliation, a plaintiff must show that (1) [he] participated in a Title VII protected activity, (2) [he] suffered an adverse employment action by [his] employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). On appeal, Plaintiff argues that he engaged in a protected activity by complaining to his supervisor about his pay and about racially insensitive remarks that had been made toward him. He also asserts that he suffered an adverse employment action when he was fired and that this was in retaliation for making these complaints.

Plaintiff's original Charge of Discrimination does not allege these facts. Rather, it states only that he was paid less than Superintendents of different races and treated differently following an accident compared to his white counterparts. Moreover, the Charge of Discrimination form also contains boxes

indicating the type of discrimination being alleged. Plaintiff checked only the box alleging that he had been discriminated against on the basis of his race. He did not select the box alleging retaliation. Because Plaintiff neither checked the box alleging retaliation nor alleged any facts relevant to a claim of retaliation, his claim of retaliation does not relate back. *See Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 373–74 (5th Cir. 2013) (per curiam) ("In Frazier's EEOC charge, he did not check the 'retaliation' box, and in the particulars section, he failed to mention any claim of retaliation. . . . Discrimination and retaliation claims are distinct, and the factual statement in Frazier's EEOC charge did not put Sabine on notice that Frazier was asserting a retaliation claim.").[3]

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

---

[3] Because we find that Plaintiff has failed to establish liability against Defendant as to any of his claims, we need not address his argument regarding the district court's denial of compensatory damages for emotional distress and mental anguish.

14

No. 15-30727

GRAVES, Circuit Judge, dissenting in part.

I would conclude that Terrance Lavigne's disparate compensation claims before October 26, 2010, were not waived. I would further conclude that Lavigne's retaliation claim related back to his initial charge. Because I would reverse the district court on these issues and remand, I respectfully dissent in part.

On March 28, 2011, just six days after he was fired, Lavigne completed an intake questionnaire and initiated a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against Cajun Deep Foundations, L.L.C. This is supported by the EEOC Charge Transmittal document dated August 26, 2011, which states that it received the charge of discrimination on March 28, 2011. Under the Code of Federal Regulations, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). *See also* 42 U.S.C. § 2000e-5(b).

Further, the record in this matter does not support the majority's conclusion that Lavigne waived this issue and only raises it for the first time on appeal. Lavigne argues in his brief that the district court erred in not using the "earlier date that the Plaintiff completed the EEOC Intake Questionnaire *and a charge of discrimination.*" (Emphasis added). In his opposition to Cajun Deep's motion for summary judgment, Lavigne asserted that he immediately "contacted the EEOC to file a charge of discrimination against the Defendant. (Exhibit 9 'Form Indicating EEOC Receipt of the Plaintiff's Complaint')."[1]

---

[1] The majority dismisses this as an insufficient "vague passing reference." I disagree. Regardless of the number of times Lavigne specifically stated the phrase "Intake

No. 15-30727

Exhibit 9 is the transmittal document which clearly states that the charge was received on March 28, 2011. Thus, Lavigne in no way waived this issue and did, in fact, raise it in opposition to summary judgment.[2]

Accordingly, I would conclude that March 28, 2011, is the date of the charge of discrimination, as opposed to August 22, 2011, which was merely the date the formal signed charge was returned.

Regardless, even if the charge did not relate back to March 28, 2011, there would need to be an analysis of whether the facts justify equitable tolling. *See Taylor v. Gen. Tel. Co. of the Sw.*, 759 F.2d 437, 442 (5th Cir. 1985).[3] As stated above, Lavigne immediately went to the EEOC (within six days of being fired) and filed his charge. He asserts that the EEOC was understaffed and that it took them until August 22, 2011, to get the formal written charging document back to him for a signature and that he returned it the following day.

---

Questionnaire," his argument centers around the timeliness of his "charge of discrimination" and the two phrases are used interchangeably. The majority further concludes it is unable to engage in the necessary inquiry without the actual "Intake Questionnaire." However, the record contains evidence that the EEOC says Lavigne made a charge of discrimination on March 28, 2011, and the court is not tasked with determining whether the EEOC erred in making that determination. Nevertheless, any need for a fact-intensive inquiry into the contents of the questionnaire would be yet another reason summary judgment was not appropriate.

[2] Notwithstanding that I disagree that Lavigne waived this issue and, thus, there would be no need to determine whether there is an exception, I disagree with the majority's conclusion of whether an exception would otherwise apply.

[3] The majority asserts that equitable tolling could not apply because Lavigne failed to raise it with the district court. However, a party's failure to raise equitable tolling in a Title VII case does not preclude the court from sua sponte considering it. *Alvarado v. Mine Serv., Ltd.*, 626 F. App'x 66 (5th Cir. 2015). Additionally, this court is not precluded from considering arguments not raised in the district court when they involve extraordinary circumstances, i.e., "when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996). The majority also says that, even if equitable tolling could be considered, this is not one of the situations where it would apply. I disagree. According to the EEOC document, Lavigne made a charge on March 28, 2011. The majority now concludes that is false. Thus, that would indicate that the EEOC misled Lavigne about the nature of his rights.

16

He was required to go through the step of filing a charge with the EEOC before proceeding with an action and he conscientiously did so. He should not then be punished for any administrative delay. Thus, even if the charge did not relate back to March 28, 2011, which is the date of the charge according to EEOC documents, then Lavigne would be entitled to equitable tolling.

For these reasons, I would conclude that summary judgment was not appropriate on this issue and I would reverse the district court.

With regard to Lavigne's retaliation claim, on the formal charge of discrimination, Lavigne checked the box for discrimination on the basis of race, but did not check the box for retaliation. He also set out the following particulars:

> I. Respondent, Cajun Deep Foundations LLC, hired me on August 18, 2005 as a helper/laborer. Since 2009, I have been working for the company as a Crew Supervisor. During the period of employment with the company, I have been subjected to unfair terms and conditions of employment because of my race (Black).
>
> II. On February 7, 2011, I [sic] suspended for 3 days for striking an I-310 overpass with an excavator. I was also required to take a drug test. The white counterparts who have been involved in similar accidents have not been suspended or required to take a drug test. I am also not receiving a Supervisor's pay even though I have a supervising job. Other Supervisors of a different race have received pay increases because of their Supervisory tasks.
>
> III. I believe that I have been discriminated against because of my Race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended, because my white counterparts are treated favorably better under similar circumstances.

The "amended" charge of discrimination states the same particulars, also does not have the retaliation box checked and has an attached sheet amending the charge to include the following:

> On March 22, 2011, I was wrongfully terminated for violating company policy, including
>
> 1) standing too close to an open excavation; 2) having an accident while operating heavy equipment; 3) my driving record; 4) Also, because I sought to be paid at the same rate as that of a job superintendent for the times I had already worked or would work, in the future, in that capacity.
>
> I believe I have been discriminated against because of my race, Black, and retaliated against for opposing unfair employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended.

As stated by the majority, the Code of Federal Regulations states that:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12(b).

Clearly, the facts supporting Lavigne's retaliation claim are essentially the same facts complained of in the original charge. Specifically, he is claiming retaliation for complaining about the accident, other unfair terms and conditions of employment, the disparate pay, and for being treated less favorably than white counterparts – all claims that were mentioned in the original charge. Further, since neither written charge has the retaliation box checked, any reliance here on the significance of that is wholly misplaced.

Because the facts supporting Lavigne's claim of retaliation "grow[ ] out of the subject matter of the original charge" and are essentially the same as those contained in his original charge, I would conclude that his retaliation claim "relate[s] back to the date the charge was first received." *See* 29 C.F.R.

§ 1601.12(b); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2003).

Moreover, Cajun Deep concedes in its brief that the "EEOC thoroughly investigated all claims that Plaintiff asserted against Deep Foundations, including those claims first asserted in his Amended Charge." This defeats any claim of failure to exhaust on this issue.

Accordingly, I would conclude that the district court erred in granting summary judgment on the basis that that this claim was time-barred.

For these reasons, I respectfully dissent in part.